Filed 2/15/01 by Clerk of Supreme Court

IN THE SUPREME COURT

STATE OF NORTH DAKOTA

2001 ND 28

Nancy Greenwood, Plaintiff and Appellant

v.

Paracelsus Health Care Corp. 

of North Dakota Incorporated 

Corporation, d/b/a Heartland 

Medical Center, and Dr. Gary 

Lindemoen, Defendants and Appellees

No. 20000175

Appeal from the District Court of Cass County, East Central Judicial District, the Honorable Norman J. Backes, Judge.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

Opinion of the Court by Neumann, Justice.

James D. Hovey (argued), Alexander Reichert (appeared), Richard A. Clapp (on brief) and Margaret Moore Jackson (on brief), Pearson Christensen, P.O. Box 5758, Grand Forks, N.D. 58206-5758, for plaintiff and appellant.

Bernard E. Reynolds, Gunhus, Grinnell, Klinger, Swenson & Guy, P.O. Box 1077, Moorhead, MN 56561-1077, for defendant and appellee Paracelsus Health Care Corp.

Joel A. Flom (argued) and Aaron J. Dorrheim (on brief), Jeffries, Olson & Flom, PA, 1325 23rd Street South, Fargo, N.D. 58103, for defendant and appellee Dr. Gary Lindemoen.

Greenwood v. Paracelsus Health Care Corp.

No. 20000175

Neumann, Justice.

[¶1] Nancy Greenwood appeals from district court judgments dismissing her medical malpractice actions against Paracelsus Health Care Corporation of North Dakota and Dr. Gary Lindemoen.  We affirm the judgment dismissing the action against Paracelsus, reverse the judgment dismissing the action against Dr. Lindemoen, and remand for a new trial against Dr. Lindemoen.

I

[¶2] In 1993 Greenwood consulted Dr. Lindemoen, an oral maxillofacial surgeon, about problems she was having with her temporomandibular joint (“TMJ”).  Dr. Lindemoen performed TMJ surgery on Greenwood in March 1994.  The surgery was performed at Heartland Medical Center, which was owned and operated by Paracelsus.  During the surgery Dr. Lindemoen placed a “bunched-up” piece of gauze in or at the outside of Greenwood’s left ear to prevent blood from draining into the ear.

[¶3] After the surgery Greenwood began experiencing discomfort in her ear.  She felt a fullness in her ear, and felt like there was water in her ear that she could not get  out.  At her follow-up visit four weeks after surgery, Greenwood told Dr. Lindemoen of the ear problems she had been experiencing.  Dr. Lindemoen told her the discomfort was normal and the ear was just healing.  It is not clear from the record whether Dr. Lindemoen actually looked into Greenwood’s ear during that visit.

[¶4] Greenwood continued to experience intermittent pain and discomfort, and her ear developed a foul odor.  In February 1996 she went to see her regular physician, Dr. James Burrell, complaining that her ear had felt plugged up for months.  Dr. Burrell examined her ear and noticed a cloth-like object covered with wax.  He then used a curette to remove the object from Greenwood’s ear.  Dr. Burrell testified the object was a gauze-like material, consistent with surgical packing, which appeared to have been in Greenwood’s ear for a long time.  Greenwood’s ear problems, including the foul odor, improved after the object was removed.  She continues to have some earaches and swelling in her ear caused by eczema.

[¶5] In December 1997, Greenwood brought this action against Dr. Lindemoen and Paracelsus, alleging they had negligently left gauze in her ear during the surgery.  A jury trial was held on April 25-26, 2000.  At the close of Greenwood’s case-in-chief, Dr. Lindemoen and Paracelsus moved for judgment as a matter of law.  The trial court granted the motions, and separate judgments dismissing the actions against Dr. Lindemoen and Paracelsus were entered.  Greenwood appealed.

II

[¶6] We have recently summarized our standard of review of a trial court’s determination of a motion for judgment as a matter of law:

The standard of review on a motion for judgment as a matter of law under N.D.R.Civ.P. 50 is the same as the standard applied to motions for directed verdict before the rule was modified in 1994.  The trial court’s decision on a motion brought under N.D.R.Civ.P. 50 to grant or deny judgment as a matter of law is based upon whether the evidence, when viewed in the light most favorable to the party against whom the motion is made, leads to but one conclusion as to the verdict about which there can be no reasonable difference of opinion.  In determining whether the evidence is sufficient to create an issue of fact, the trial court must view the evidence in the light most favorable to the non-moving party, and must accept the truth of the evidence presented by the non-moving party and the truth of all reasonable inferences from that evidence.  A trial court’s decision on a motion for judgment as a matter of law is fully reviewable on appeal.

Peterson v. Traill County
, 1999 ND 197, ¶ 7, 601 N.W.2d 268 (citations omitted); 
see also
 
Symington v. Mayo
, 1999 ND 48, ¶ 4, 590 N.W.2d 450.

III

[¶7] The defendants based their motions for judgment as a matter of law upon N.D.C.C. § 28-01-46, and the trial court based its dismissal of Greenwood’s claims upon that statute.  Section 28-01-46 provides:

Expert opinion required to maintain an action based upon alleged medical negligence except in obvious cases.
  Any action for injury or death against a physician, nurse, or hospital licensed by this state based upon professional negligence must be dismissed without prejudice on motion unless the claimant has obtained an admissible expert opinion to support the allegation of professional negligence within three months of the commencement of the action or at such later date as set by the court for good cause shown by the plaintiff.  The expert’s affidavit must identify the name and business address of the expert, indicate the expert’s field of expertise, and contain a brief summary of the basis for the expert’s opinion.  This section does not apply to alleged lack of informed consent, unintentional failure to remove a foreign substance from within the body of a patient, or performance of a medical procedure upon the wrong patient, organ, limb, or other part of the patient’s body, or other obvious occurrence.

[¶8] We have addressed the legislative intent underlying the statute in a number of prior cases.  Section 28-01-46 was specifically designed to dispose of frivolous or nuisance medical malpractice actions at an early stage of the proceedings.  
Larson v. Hetland
, 1999 ND 98, ¶ 12, 593 N.W.2d 785; 
Ellefson v. Earnshaw
, 499 N.W.2d 112, 114 (N.D. 1993); 
Larsen v. Zarrett
, 498 N.W.2d 191, 192 (N.D. 1993); 
Fortier v. Traynor
, 330 N.W.2d 513, 516 (N.D. 1983).  The statute provides for preliminary screening of totally unsupported claims, and seeks to prevent protracted litigation when a medical malpractice plaintiff cannot substantiate a basis for the claim.  
Larson
, at ¶ 12; 
Ellefson
, 499 N.W.2d at 114; 
Larsen
, 498 N.W.2d at 192.  The statute was enacted to prevent the necessity of an actual trial in such cases.  
Larsen
, 498 N.W.2d at 192; 
Fortier
, 330 N.W.2d at 516; 
Weasel v. St. Alexius Medical Center
, 230 F.3d 348, 351 (8th Cir. 2000).

[¶9] Section 28-01-46 is clearly intended to apply only pre-trial.  The defendants had over two years between the commencement of the action and the beginning of trial to seek dismissal based upon the statute, but failed to do so.  They waited until the close of the plaintiff’s case, on the second day of trial, to move for judgment as a matter of law under N.D.R.Civ.P. 50.

[¶10] Section 28-01-46 does not apply once the trial has begun.  At that point, the plaintiff’s burden is to establish a prima facie case, with appropriate expert testimony if required.  In order to establish a prima facie medical malpractice case, the plaintiff  must present evidence establishing the applicable standard of care, a violation of that standard, and a causal relationship between the violation and the harm complained of.  
E.g.
, 
Larsen
, 498 N.W.2d at 192; 
Heimer v. Privratsky
, 434 N.W.2d 357, 359 (N.D. 1989); 
Peterson v. Kilzer
, 420 N.W.2d 754, 755 (N.D. 1988); 
Winkjer v. Herr
, 277 N.W.2d 579, 583 (N.D. 1979).  The dispositive issue on appeal is whether, when viewing the evidence in the light most favorable to Greenwood, accepting the truth of all of her evidence, and giving her the benefit of all reasonable inferences to be drawn from the evidence, the jury could reach only one conclusion with no reasonable difference of opinion.  
See
 
Peterson v. Traill County
, 1999 ND 197, ¶ 7, 601 N.W.2d 268.

IV

[¶11] We will first address this standard as it applies to Greenwood’s claims against Dr. Lindemoen.

[¶12] The parties devote much of their arguments to N.D.C.C. § 28-01-46 and res ipsa loquitur.  Dr. Lindemoen argues that, even if N.D.C.C. § 28-01-46 is not directly applicable, it is still essentially a definition of the doctrine of res ipsa loquitur in medical malpractice cases.  
See
 
Larsen
, 498 N.W.2d at 194.  Accordingly, Dr. Lindemoen argues Greenwood’s claim fails because it does not fit under traditional res ipsa loquitur concepts nor within one of the exceptions in N.D.C.C. § 28-01-46.  We find it unnecessary to address these issues because we conclude Greenwood established a prima facie case without relying upon res ipsa loquitur or upon the exceptions to N.D.C.C. § 28-01-46.

[¶13] Our caselaw generally requires that the plaintiff establish through expert testimony the degree of care and skill required of a physician, and whether specified acts fall below that standard of care.  
See
 
Heimer
, 434 N.W.2d at 359; 
Winkjer
, 277 N.W.2d at 585.  In this case Dr. Lindemoen provided the necessary expert testimony when he testified that the applicable standard of care would require gauze placed in the ear during surgery to be removed, and if a physician left gauze in a patient’s ear after surgery it would fall beneath the standard of care for an oral maxillofacial surgeon.  A medical malpractice plaintiff may establish the relevant standard of care and a prima facie case through cross-examination of the defendant physician.  
Peterson
, 420 N.W.2d at 756; 
Winkjer
, 277 N.W.2d at 586.  Dr. Lindemoen’s testimony established the standard of care in this case.

[¶14] Having established that leaving gauze in the ear would fall below the standard of care, Greenwood was next required to prove Dr. Lindemoen did in fact leave gauze in her ear after the surgery.  We conclude Greenwood presented sufficient evidence from which the jury could draw that inference.  At one point Dr. Lindemoen testified he placed a bunched-up piece of gauze at the outside of Greenwood’s ear during the surgery.  At other times he testified he placed the gauze in the ear.  He also testified it would have been his responsibility, not one of the nurses’ responsibility, to remove the gauze.  He testified he did not specifically remember removing the gauze from Greenwood’s ear, and there were no records indicating the gauze had been removed.  Greenwood testified she felt pain and fullness in her ear after the surgery, and those symptoms continued until February 1996, when Dr. Burrell removed gauze-like material from her ear.  Dr. Burrell testified the item he removed was gauze-like, consistent with surgical packing, and looked like it had been in Greenwood’s ear for a long time.  Greenwood testified neither she nor anyone else other than Dr. Lindemoen had placed anything in her ear.  This evidence, when viewed as the law requires in the light most favorable to Greenwood, was sufficient to allow the jury to draw an inference that Dr. Lindemoen left gauze in Greenwood’s ear after surgery which remained there until removed by Dr. Burrell in 1996.

[¶15] Dr. Lindemoen argues Greenwood was required to establish breach of the standard of care by expert testimony.  Under the facts of this case, it is unclear what the substance of such an expert’s testimony would have been.  It was not necessary to call an expert to testify it was more likely than not that Dr. Lindemoen left gauze in Greenwood’s ear.  Whether Dr. Lindemoen actually left gauze in Greenwood’s ear was an ordinary fact question for the jury, and an expert’s opinion would not have assisted the jury in resolving that question.  
See
 N.D.R.Ev. 702.

[¶16] Medical malpractice cases typically involve a complex jumble of medical, technical, and ordinary fact questions.  While expert testimony may be necessary to assist the jury in sorting out the medical and technical issues, the ordinary fact questions are for the jury to decide.  For example, in 
Bader v. Johnson
, 732 N.E.2d 1212 (Ind. 2000), the plaintiffs brought a medical malpractice action alleging the defendant doctor had negligently failed to provide them with the results of an ultrasound test.  After first establishing the doctor had a duty to disclose the results of the test, the court concluded expert testimony was not required to establish the doctor had in fact failed to provide the results:

As for a breach of duty, expert medical testimony is usually required to determine whether a physician’s conduct fell below the applicable standard of care.  This is generally so because the technical and complicated nature of medical treatment makes it impossible for a trier of fact to apply the standard of care without the benefit of expert opinion on the ultimate question of breach of duty.  Here, however, we doubt whether expert testimony is required to determine whether Healthcare [P]roviders breached its duty.  If Healthcare Providers did not provide the Johnsons with the result of the ultrasound, then Healthcare Providers breached its duty.  It does not appear to us that expert testimony is required on this point.

Bader
, 732 N.E.2d at 1217-18 (citations omitted).  Similarly, in this case expert testimony was not required to apply the relevant standard of care.  The question whether Dr. Lindemoen actually left gauze in Greenwood’s ear was a pure, ordinary fact issue for the jury to decide based upon the direct and circumstantial evidence, and no expert testimony on the issue was needed.

[¶17] Finally, Dr. Lindemoen contends that, even if Greenwood has established a breach of the relevant standard of care, she failed to prove the injuries complained of were caused by that breach.  We disagree.

[¶18] It is undisputed Greenwood underwent a procedure in 1996 in which Dr. Burrell removed an object from her ear with a currette.  Dr. Burrell testified the procedure would have caused pain and discomfort for Greenwood.  Greenwood testified the procedure was painful, and that she bore the expense of the procedure.  If the jury finds that the object removed from Greenwood’s ear was gauze negligently left there by Dr. Lindemoen after her earlier surgery, at a minimum Greenwood has established causation of the pain and expense of the 1996 procedure to remove it.

[¶19] There is also other evidence supporting a finding of causation.  When Dr. Lindemoen was asked about Greenwood’s ear problems, and what might occur if gauze were left in a patient’s ear for an extended period of time, he testified:

A medicated ointment dressing like this would prevent any kind of infection unless it was left for years.  I mean, then you would probably get something.

In addition, Greenwood testified, without objection, about what Dr. Burrell believed had caused her ongoing ear problems:

Q.  In 1999 did Dr. Burrell indicate to you that you had a problem with your left ear?

A.  And what was that?  I’m sorry.

Q.  Is Dr. Burrell — have you gone to see Dr. Burrell about your ear?

A.  Yes, I have.

Q.  And do you have an understanding as to what is wrong with your ear?

A.  He — according to what was told to me I have eczema in my ear and that it was caused from the mesh being left in my ear.

From all of this evidence, viewed as a whole, the jury could have found at least some of Greenwood’s claimed harm was caused by gauze being left in her ear by Dr. Lindemoen.

[¶20] Viewing the evidence in the light most favorable to Greenwood and giving her the benefit of all reasonable inferences from that evidence, we conclude Greenwood presented a prima facie case of medical malpractice against Dr. Lindemoen.  Accordingly, the trial court erred in granting Dr. Lindemoen’s motion for judgment as a matter of law.

V

[¶21] We reach a different result on Greenwood’s claim against Paracelsus.  Greenwood did not present evidence that Dr. Lindemoen was an employee or agent of the hospital, nor advance any other theory to hold the hospital responsible for Dr. Lindemoen’s actions.

[¶22] Thus, to recover against the hospital, Greenwood would have to establish negligence by one of the hospital’s own employees.  The record indicates the hospital provided a scrub nurse and a circulating nurse, but the actual surgical procedure was performed entirely by Dr. Lindemoen and his surgical nurse, who was his own employee and not affiliated with the hospital.  In order to base liability upon the actions of the scrub nurse or surgical nurse, Greenwood would have to present evidence of the appropriate standard of care and skill for such nurses, a violation of that standard, and a causal connection between the violation and the harm complained of.  
See, e.g.
, 
Larsen
, 498 N.W.2d at 192.  Greenwood presented no evidence establishing the applicable standard of care for nurses.  Accordingly, she failed to establish a prima facie case of medical malpractice against the hospital, and the trial court did not err in granting Paracelsus’s motion for judgment as a matter of law.

VI

[¶23] We affirm the judgment dismissing Greenwood’s action against Paracelsus, reverse the judgment dismissing Greenwood’s action against Dr. Lindemoen, and remand for a new trial against Dr. Lindemoen.

[¶24] William A. Neumann

Mary Muehlen Maring

Carol Ronning Kapsner

Dale V. Sandstrom

Gerald W. VandeWalle, C.J.